# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DIVISION OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:06CV324

| | |
|---|---|
| CONVERGENT ACQUISITIONS AND DEVELOPMENT, INC., a Delaware corporation, and CAROLINAS REAL ESTATE, INC., a North Carolina corporation, )<br><br>Plaintiffs, )<br><br>v. )<br><br>CREDENT REAL ESTATE, INC., a California corporation; RIXON KIEN; CHARLES SALISBURY; and ALEXANDER "SASHA" ZASLAVSKY, )<br><br>Defendants. ) | **ORDER** |

THIS MATTER is before the Court upon Defendants Credent Real Estate, Inc. ("Credent"), Rixon Kien ("Kien") and Alexander "Sasha" Zaslavsky's ("Zaslavsky") Motions to Dismiss Plaintiffs' Complaint. (Documents #6, #8). For the reasons set forth below, Defendants' motions are GRANTED.

## BACKGROUND

Convergent Acquisitions and Development, Inc. ("Convergent") is a Delaware corporation with its principal place of business in North Carolina. Convergent is a real estate vendor who contracted to purchase several subdivision properties in Charlotte, North Carolina in January 2006. Complaint ¶¶ 16, 18. Convergent retained the services of Carolinas Real Estate,

1

Inc. ("CRE"), a corporate citizen of North Carolina, to act as its exclusive agent in the sales of these properties. Compl. ¶ 17.

Kien is a resident of the State of California residing in Orange County, California who has never visited the State of North Carolina and owns no property in North Carolina. Aff. Of Rixon Kien ¶¶ 3, 4. Kien is licensed only by the State of California. Id. ¶¶ 5, 8. Kien is the president, owner and broker-in-charge of Credent, a California corporation, duly created and existing under the laws of the State of California, with offices located only in California. Id. ¶¶ 5, 7. Credent is a real estate agency and brokerage firm which lists properties for sale and/or rent in the State of California, as well as assists its clients with financing. Id. ¶ 6. Credent does not have any employees who have been licensed in North Carolina as real estate brokers or agents. Id. ¶ 8. Credent has never maintained an office, telephone listing, post office box, mailing address, bank account or registered agent, nor do they engage in any substantial activity in North Carolina. Id. ¶ 18.

Both Salisbury and Zaslavsky are independently-contracted real estate agents licensed in California. Prior to February 2006, Salisbury and Zaslavsky were hired by Credent to list, sell and/or rent properties located in the State of California. Id. ¶ 9. Convergent and CRE ("Plaintiffs") allege that on or about February 17, 2006, Salisbury entered into an agreement with Convergent where he agreed to receive Convergent's "white paper" and abide by the terms and conditions set forth on their web site. Compl. ¶ 24. A "white paper" contains specific information regarding properties and the local market in which the property is being sold. The "white paper" is only available after a potential client has agreed to a number of covenants, including a covenant not to compete and a confidentiality agreement. Salisbury executed one

such Confidentiality, Noncircumvention, and Nondisclosure Agreement with CRE on or about March 11, 2006. Compl. ¶ 25. This information was not to be disclosed without the express written consent of Convergent.

Plaintiffs allege that Salisbury violated this agreement by publicly disclosing the information through real estate seminars, radio talk shows, and by revealing the information to Zaslavsky. Compl. ¶¶ 27-29. Plaintiffs assert that both Salisbury and Zaslavsky purchased or directed the purchase of properties in the Charlotte, North Carolina subdivision directly from the builder or its agent, with the intent to circumvent Convergent, and then proceeded to brag about their ability to outsmart them. Compl. ¶¶ 31, 32. According to Plaintiffs, subsequent to Salisbury's alleged disclosure of confidential information to Zaslavsky, an abnormally high number of California investors began to contract for purchase of property in the aforementioned subdivision directly from the builder and/or agent. Compl. ¶ 30. Plaintiffs further allege that due to this abnormally high number of potential buyers, an attorney began contacting Kien sometime after March 11, 2006 stating that he represented either Convergent or CRE. Compl. ¶ 33. The attorney claimed that Salisbury and Zaslavsky had disclosed and misappropriated confidential information in breach of the signed Confidentiality, Noncircumvention, and Nondisclosure Agreement. The attorney suggested that Credent and Kien were liable for the actions of Salisbury and Zaslavsky. Credent and Kien denied any wrongdoing.

Plaintiff's complaint alleges eight causes of action including Defendants' breach of written contracts, interference with contractual relations, interference with business relations, misappropriation of confidential information, unfair trade practices, unjust enrichment, and defamation. Defendants Credent, Kien and Zaslavsky move to dismiss under Rule 12(b)(2) for

3

lack of personal jurisdiction.

## DISCUSSION

**A. Standard for Motions to Dismiss for Lack of Personal Jurisdiction**

A federal court has personal jurisdiction over a defendant only if a state court in the state in which the federal court sits would have had personal jurisdiction. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). Personal jurisdiction is established out of a two-part inquiry: (1) is there statutory authority for the exercise of jurisdiction under the laws of the State in which it sits, and if so, (2) does the exercise of jurisdiction comport with the Due Process Clause of the Fourteenth Amendment. Hardy v. Pioneer Parachute Company, Inc., 531 F.2d 193,195 (4th Cir. 1976) (citing Bowman v. Curt G. Joa, Inc., 361 F.2d 706, 711 (4th Cir. 1966) and International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This two-part inquiry collapses into one where, as here, jurisdiction is asserted pursuant to North Carolina General Statute § 1-75.4(1)(d) (North Carolina's "long-arm statute"), which provides the opportunity to exercise personal jurisdiction to the extent allowed by due process. Planet Genetic Sys., N.V. v. CIBA Seeds, 933 F. Supp. 519, 522-23 (M.D.N.C. 1996) (citing Vishay Intertechnology, Inc. V. Delta Int'l Corp., 696 F.2d 1062, 1064 (4th Cir. 1982) (quoting Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977))).

If personal jurisdiction over an out-of-state defendant is conferred by virtue of a state's long-arm statute, then a federal court may assert personal jurisdiction over the defendant if the defendant has purposefully established certain "minimum contacts" with the State such that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." International Shoe Co., 326 U.S. at 316; see also English & Smith v. Metzger, 901 F.2d

4

36, 39 (4th Cir. 1990). The courts have determined that the following five factors should be used in deciding whether the long-arm statute and minimum contacts have been satisfied: (1) quantity of contacts; (2) nature and quality of the contacts; (3) source and connection of the cause of action to the contacts; (4) interest of the forum state; and (5) convenience. See Western Seer-Mom 'N' Pops v. FMT Invs., Inc., 578 F. Supp. 260, 264 (W.D.N.C. 1984).

Personal jurisdiction exists in two varieties, general and specific. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). General jurisdiction exists where the defendant has such "continuous and systematic" contacts with the forum state that she may be haled into court in that forum on any claim. Id. at 414-415. Specific jurisdiction is more narrow, existing where the suit arises out of or relates to the defendant's contact with the state. Id. This Court has synthesized the requirements of the Due Process Clause for asserting specific jurisdiction into a three-part test: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (quoting ALS Scan, Inc. V. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). Only if all three parts are satisfied may a court exercise specific jurisdiction over a defendant consistent with the Due Process Clause.

**B. Defendants Credent and Kien:**

**1. Long-Arm Statute:**

Plaintiffs argue that jurisdiction is proper under N.C. Gen. Stat. §§ 1-75.4(5)(c),(d) and § 1-75.4(6) since the dispute arises out of and relates to Salisbury's contracts and mutual

agreements with them. Other than the fact that they employ Salisbury, Credent and Kien do not have any contacts at all with the State of North Carolina. Aff. of Rixon Kien, ¶¶ 8, 18. Therefore, the success of Plaintiffs' argument is predicated upon whether Salisbury was acting as an agent for Credent and Kien, making Credent and Kien liable for Salisbury's actions, or whether his actions may be imputed to them based on their employment relationship.

Under both North Carolina and California law there are "two factors that are essential in establishing an agency relationship: (1) [t]he agent must be authorized to act for the principal; and (2) [t]he principal must exercise control over the agent." Crist v. Crist, 145 N.C. App. 418, 425, 550 S.E.2d 260, 266 (2001) (quoting Johnson v. Amethyst Corp., 120 N.C. App. 529, 532-33, 463 S.E.2d 397, 400 (1995)); accord van't Rood v. County of Santa Clara, 113 Cal. App. 4th 549, 571, 6 Cal. Rptr. 3d 746, 764 (2003) ("Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control . . ."). A principal may be liable for the actions of his agent if it is determined that the agent acted within either his actual or apparent authority to take said actions. McGarity v. Craighill, Rendleman, Ingle & Blythe, P.A., 83 N.C. App. 106, 109, 349 S.E.2d 311, 313 (1986); see also Kim v. Sumitomo Bank of California, 17 Cal. App. 4th 974, 983, 21 Cal. Rptr. 2d 834, 840 (1993) ("The fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other. In order to create an agency, the principal must confirm authority upon the agent.")

Actual authority results from the intentional acts of the parties, which may be either expressed or implied. Vaughn v. N.C. Dep't of Human Resources, 37 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978); see also van't Rood, 113 Cal. App. 4th at 571, 6 Cal. Rptr. 3d at 764

6

(stating that actual agency typically arises by express agreement or it may be implied from the conduct of the parties). On the other hand, under apparent authority, "a principal's liability is to be determined by what authority a person in the *exercise of reasonable care* was justified in believing the principal conferred upon his agent." Branch v. High Rock Reality, Inc., 151 N.C. App. 244, 250, 565 S.E.2d 248, 253 (2002) (emphasis added) (holding that a real estate agency was not liable to plaintiff for promises made by its former real estate agent, even though such promises were made while the agent was still employed by agency)); accord van't Rood, 113 Cal. App. 4th at 572, 6 Cal. Rptr. 3d at 765 (stating that ostensible (or apparent) authority is such as a principal causes or allows a third person to believe the agent to possess).

> The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal; and a third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises.

Fleming v. Employers Mut. Liability Ins. Co., 269 N.C. 558, 561, 153 S.E.2d 60, 62 (1967) (holding that an insurance agent's statements could not bind insurance company absent a showing that such statements were made within the scope of the agent's authority)); see also van't Rood, 113 Cal. App. 4th at 573, 6 Cal. Rptr. 3d at 765 ("Persons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority...[because a] principal cannot be held [liable] when an actual agent acts beyond the scope of his actual or [apparent] authority.") (citations omitted)).

Credent and Kien argue that Salisbury and Zaslavsky acted without actual or apparent authority, and therefore, they should not be held liable for their actions. Salisbury and Zaslavsky were hired by Credent and Kien to list, market, sell and/or rent properties in the State of

California and Credent and Kien did not instruct, assist, or encourage Salisbury or Zaslavsky to engage in any of the actions alleged in Plaintiffs' Complaint. Defs. Credent Real Estate, Inc.'s and Rixon Kien's Reply to Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 5. Their alleged conduct occurred outside the scope of their employment with Credent and Kien, and they did not have actual authority to act. Id. Thus, § 1-75.4(5) and § 1-75.4(6) do not confer jurisdiction over Credent and Kien because under agency law, they are not responsible for the alleged acts of Salisbury and Zaslavsky.

Plaintiffs also argue that Salisbury testified under oath that he was "at all times relevant to this action, an agent for Defendant Credent Real Estate, Inc.," and thus, Salisbury and Zaslavsky's actions should be imputed upon Credent and Kien based upon this employment relationship. Aff. of Nicolas Sabardin ¶ 4, Aff. of Kenneth I. Helfing ¶ 4. However, assuming that Salisbury stated he was an agent for Credent, this statement alone does not provide grounds for Salisbury's actions to be imputed upon Credent and Kien. California law requires that brokers-in-charge exercise reasonable supervision over the activities of their agents and that such supervision includes overseeing transactions requiring a real estate license and the advertising of any service for which a license is required. Cal. Code Regs. tit. 10, § 2725 (2007). Credent and Kien argue that Salisbury and Zaslavsky were hired to list, market, sell and/or rent properties located in the State of California. Therefore, "reasonable supervision" would include any activities that require a California real estate license. Therefore, it is not reasonable to hold Credent and Kien liable for actions of their employees that took place in North Carolina, which were outside the course and scope of their employment.

Furthermore, Credent and Kien argue that the law does not allow Plaintiffs to blindly trust

Salisbury's alleged statements. Instead, they have the burden of determining the existence of Salisbury's authority. See Fleming, 269 N.C. at 561, 153 S.E.2d at 62. Plaintiffs did not exercise reasonable diligence in determining Salisbury's authority. In fact, Plaintiffs admit that they knew Salisbury and Zaslavsky were not licensed in North Carolina, and therefore they knew or should have known that Salisbury and Zaslavsky's actions were, or could be, outside the scope of their employment. Compl. ¶¶ 11 - 14. For these reasons, North Carolina's long-arm statute does not confer jurisdiction.

**2. Due Process Clause of the 14th Amendment:**

Even if the North Carolina long-arm statute does confer jurisdiction over Credent and Kien based on their agency relationship with Salisbury and Zaslavsky, jurisdiction would not be proper under the Due Process Clause of the 14th Amendment. Plaintiffs allege only specific jurisdiction over Credent and Kien. Pls.' Mem. of Law in Opp'n to Defs. Credent Real Estate Inc.'s and Rixon Kien's Mot. to Dismiss at 10. Therefore, the Court must analyze (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. Mitrano, 377 F.3d at 407, quoting ALS Scan, 293 F.3d at 712.

Credent is a California corporation with all offices and property in California. Credent has no employees who are licensed to sell real estate in North Carolina. Kien has never visited North Carolina, owns no property in North Carolina, does not have a real estate license for any state other than California, and has no personal business in North Carolina. Neither Credent nor Kien have any contracts or mutual agreements with Convergent or CRE, nor have they provided

9

or paid for services in North Carolina. Credent and Kien did not instruct, assist or encourage Salisbury or Zaslavsky to perform any duties outside the course and scope of their employment. In sum, Credent and Kien do not have any sufficient contacts with the State of North Carolina. Therefore, Credent and Kien did not purposefully avail themselves of the privilege of conducting activities in North Carolina and could not reasonably anticipate being haled into court there.

Furthermore, Plaintiffs' claims do not arise directly out of Credent and Kien's activities but instead out of those alleged actions of Salisbury and Zaslavsky. As previously discussed, there is no basis on which to hold Credent and Kien liable for the alleged actions of Salisbury and Zaslavsky. Requiring Credent and Kien to be sued in North Carolina seems constitutionally unreasonable and offends "traditional notions of fair play and substantial justice." See International Shoe Co., 326 U.S. at 316.

**C. Defendant Zaslavsky:**

**1. Long-Arm Statute:**

Plaintiffs argue that jurisdiction over Zaslavsky is proper under N.C. Gen. Stat. §§ 1-75.4(5)(c),(d) and § 1-75.4(6) since his actions arise out of and relate to Salisbury's contracts and mutual agreement with them. Specifically, Plaintiffs assert that Zaslavsky received confidential information from Salisbury and used it for his own personal gain in order to avoid paying commissions to Plaintiffs. Compl. ¶ 29. Additionally, they argue that pursuant to § 1-75.4(5)(d) Zaslavsky's actions also relate to things of value shipped from North Carolina by Plaintiffs to Salisbury. Therefore, Plaintiffs assert that Zaslavsky's actions arise out of Salisbury's promise to keep the confidential information pursuant to § 1-75.4(5)(c).

Zaslavsky is a resident of the State of California who has never resided in North Carolina,

although he has visited the state on three separate occasions, purchased two rental properties in the state and is currently under contract with Atlantic Realty Group to manage those properties in North Carolina. Aff. of Alexander "Sasha" Zaslavsky ¶ 5. He is licensed to practice real estate in California and does not have a license to practice real estate in North Carolina. Zaslavsky has never made any promises to Plaintiffs that he would create interest in, or protect, acquire, dispose of, use, rent, own, control or possess real property in North Carolina.

Although Zaslavsky does have contacts with North Carolina, those contacts do not arise out of or relate to Plaintiffs' claims. Those contacts are wholly independent acts. The purchase of the rental properties came about as a result of his own independent internet research, without any aid from Plaintiffs. Id. ¶ 25. In fact, Zaslavsky alleges that he had no dealings whatsoever with Plaintiffs to the extent that he was not aware of any entities named Convergent Acquisitions and Development, Inc., or Carolinas Real Estate, Inc. At the time he purchased his rental properties. Id. ¶ 37.

The only viable link between Zaslavsky and Plaintiffs is through Salisbury and this tenuous connection does not satisfy the standard of personal jurisdiction. Sometime after March 1, 2006 and before the purchase of the properties, Zaslavsky attended a real estate seminar presented by Salisbury. However, at no time during the seminar did Salisbury mention Convergent Acquisitions and Development, Inc., or Carolinas Real Estate, Inc. or the "white paper." Id. at ¶ 18. In fact, Zaslavsky states that "Salisbury did not mention Convergent Acquisitions and Development, Inc., or Carolinas Real Estate, Inc., or the 'white paper' during his seminar presentation" and that Salisbury "did not mention any particular community or subdivision during his presentation." Id.

11

Therefore, it cannot reasonably be argued that Zaslavsky's actions arise out of or relate to Plaintiffs' claims in any way. Although the Complaint states otherwise, "Zaslavsky has openly boasted of how he outwitted and outsmarted Convergent" (Compl. ¶ 31), Zaslavsky's sworn Affidavit states the opposite, "[a]t the time that I purchased my rental properties in Charlotte, North Carolina, I was not aware of any entities named Convergent Acquisitions and Development, Inc., or Carolinas Real Estate, Inc. (Aff. of Alexander "Sasha" Zaslavsky ¶ 37).

**2. Due Process of the 14th:**

For similar reasons as explained above, even if the North Carolina long-arm statute does confer jurisdiction over Zaslavsky, jurisdiction would not be proper under the Due Process Clause of the 14th Amendment.

While Zaslavsky has purposefully availed himself of the privilege of conducting business and activities in the State of North Carolina, and therefore it is reasonably foreseeable that he be hailed to court there, Plaintiffs' claims do not arise out of or relate to Zaslavsky's activities for reasons set forth above. Therefore, asserting specific jurisdiction over Zaslavsky is not constitutionally reasonable.

In sum, neither North Carolina's long-arm statute nor the 14th Amendment provide any basis for personal jurisdiction over Credent, Kien, or Zaslavsky.

IT IS THEREFORE ORDERED that Defendants' Credent and Kien's Motion to Dismiss pursuant to Rule 12(b)(2) is GRANTED.

IT IS FURTHER ORDERED that Defendant Zaslavsky's Motion to Dismiss pursuant to Rule 12(b)(2) is GRANTED.

Signed: July 23, 2007

Graham C. Mullen
United States District Judge